# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CHARLES GREGORY CLARK, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0454-WS-C |
| | ) |
| JEFFERSON S. DUNN, etc., | ) |
| | ) |
|     Respondent. | ) |

**ORDER**

This matter is before the Court on the petitioner's Rule 59(e) motion to alter or amend the Court's order, (Doc. 58), and judgment, (Doc. 59), denying the amended petition in its entirety and denying any certificate of appealability ("COA"). (Doc. 60). While the amended petition identifies a dozen claims, (Doc. 58 at 8-9), the instant motion addresses only five of them. Familiarity with the record, previous briefing, and the Court's order is assumed.

**I. *Ring* Violation.**

The petition claims that Alabama's capital sentencing scheme violates *Ring v. Arizona*, 636 U.S. 584 (2002), because, regardless of what the jury finds or recommends, a sentence of death depends on the trial judge independently finding one or more aggravating circumstances and determining that they outweigh any mitigating circumstances she finds. (Doc. 13 at 103-06). The Court rejected the claim as based on a misreading of *Ring*. (Doc. 58 at 82-84). The petitioner now argues that the Court is in error because it did not consider the impact of *Hurst v. Florida*, 136 S. Ct. 616 (2016). (Doc. 60 at 6-8).

"[T]he Sixth Amendment does not permit a defendant to be 'expose[d] … to a penalty exceeding the maximum he would receive if punished according to

the facts reflected in the jury verdict alone." *Ring*, 636 U.S. at 588-89 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 483 (2000)) (emphasis omitted). *Ring* expanded this holding to capital defendants. *Id*. at 589 ("Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."). The *Ring* Court identified the fact conditioning an increase in an Arizona murderer's maximum punishment from life to death as the existence of a statutory aggravating factor. 636 U.S. at 597, 604. "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' … the Sixth Amendment requires that they be found by a jury." *Id*. at 609 (quoting *Apprendi*, 530 U.S. at 494 n.19). The Arizona scheme was unconstitutional because it required the trial court, exclusive of the jury, to make the triggering finding that a statutory aggravating factor was present. *Id*. at 597.

As the Court has explained: the maximum penalty for murder during a first-degree robbery under Alabama law is life imprisonment; the fact that "conditions an increase in [the] maximum punishment" for this crime from life to death is the existence of a statutory aggravating factor; one such factor is that the murder was committed while the defendant was committing, or fleeing from, a robbery; and the jury by its verdict necessarily found this aggravating circumstance unanimously and beyond a reasonable doubt, thereby satisfying *Ring*. (Doc. 58 at 82).

*Ring* does not purport to require more than this. As the Court noted, (Doc. 58 at 82-83), the Eleventh Circuit has expressly ruled that *Ring* demands only that the jury find an aggravating circumstance that increases the maximum punishment to death; *Ring* does not preclude the finding being embedded in the verdict, nor does it preclude the trial judge from weighing aggravating circumstances against

2

mitigating circumstances. *Lee v. Commissioner, Alabama Department of Corrections*, 726 F.3d 1172, 1197-98 (11th Cir. 2013).[1]

Because the Court of Criminal Appeals ("CCA") reached this claim and ruled on the merits that the jury's guilty verdict satisfied *Ring*, the only question before the Court was whether the CCA's ruling was contrary to, or an unreasonable application of, *Ring*. Especially in light of *Lee*, it plainly was neither. (Doc. 58 at 84).

According to the petitioner's instant motion, *Hurst* "clarified" *Ring* by holding that the jury must find all aggravating and mitigating circumstances and must find which outweighs the other. In light of *Hurst*, he concludes, the CCA unreasonably applied *Ring*. (Doc. 60 at 7-8).

*Hurst* was handed down in January 2016. The original petition in this case was filed in August 2016, with the amended petition following in November 2016 and the petitioner's reply brief in March 2017. In none of these documents does the petitioner reference *Hurst*, and a post-judgment motion under Rule 59(e) is too late to inject *Hurst* into the case. "Rule 59(e) … may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (internal quotes omitted). This limitation on the usage of Rule 59(e) fully applies in habeas proceedings under Section 2254. *E.g., Hamilton v. Secretary, Department of Corrections*, 793 F.3d 1261, 1266-67 (11th Cir. 2015).

Even if the petitioner had timely raised *Hurst*, he has overstated its reach. The Supreme Court did rule that Florida's sentencing scheme "violates the Sixth Amendment in light of *Ring*," *id*. at 621, but it made plain that the constitutional deficiency was the same one identified in *Ring* – that a judge rather than the jury was required to make the critical finding of an aggravating circumstance, the

---

[1] The *Ring* Court expressly noted that the petitioner "makes no Sixth Amendment claim with respect to mitigating circumstances" or that the jury must ultimately decide whether the death penalty is imposed. 636 U.S. at 597 n.4.

existence of which increased the defendant's potential punishment from life to death.

The *Hurst* Court identified the constitutional problem in *Ring* as that "a judge could sentence Ring to death only after independently finding at least one *aggravating circumstance*," which finding "exposed Ring to a greater punishment than that authorized by the jury's guilty verdict," and it concluded that "[t]he analysis the *Ring* Court applied to Arizona's sentencing scheme applies equally to Florida's." 136 S. Ct. at 621-22 (emphasis added). Thus, "Florida's sentencing scheme, which required the judge alone to find the existence of an *aggravating circumstance*, is therefore unconstitutional," and prior cases "are overruled to the extent they allow a sentencing judge to find an *aggravating circumstance*, independent of a jury's factfinding, that is necessary for imposition of the death penalty." *Id*. at 624 (emphasis added).

The petitioner ignores all this language, instead seizing on *Hurst*'s few references to mitigating circumstances. This is a red herring. *Hurst* first referenced mitigating circumstances simply to set forth the Florida scheme. 136 S. Ct. at 620. The Court next mentioned mitigating circumstances in two quotes from judicial opinions, offered to show that a Florida jury makes no specific factual findings regarding aggravating (or mitigating) circumstances. *Id*. at 622. Finally, the Court quoted the Florida statute, again to show that the trial judge alone finds the facts regarding aggravating (and mitigating) circumstances. *Id*.

The statutory quote underscores the limited reach of *Hurst*. Under Florida law as it stood at the time, a judge imposing a death sentence was required to issue written findings "(a) [t]hat sufficient aggravating circumstances exist … and (b) [t]hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances." Fla. Stat. § 921.141(3) (quoted in *Miller v. State*, 42 So. 3d 204, 215 (Fla. 2010)). The *Hurst* Court expressly identified the constitutional infirmity as that "Florida law required the judge to hold a separate hearing and determine whether sufficient aggravating circumstances existed to justify imposing the death

4

penalty." 136 S. Ct. at 619. That is, the infirmity lay with the finding of aggravating circumstances (subsection (a)) and not with the weighing of mitigating versus aggravating circumstances (subsection (b)).[2]

The Court has traveled this road before, and what it said then stands now. In *Taylor v. Dunn*, 2018 WL 575670 (S.D. Ala. 2018), the Court rejected the same construction of *Hurst* the petitioner proposes here as "unsupported by the clear language of the opinion." *Id*. at *70. Moreover, under the Alabama sentencing scheme, unlike Florida's, "a defendant is not death-eligible unless a jury unanimously finds beyond a reasonable doubt the existence of an aggravating circumstance." *Id*.

In *Waldrop v. Commissioner, Department of Corrections*, 711 Fed. App. 900 (11th Cir. 2017), the Eleventh Circuit concluded that the Alabama Supreme Court's ruling – that the jury's guilty verdict on a charge of murder during a first-degree robbery (the same verdict as the petitioner received) made the defendant eligible for the death penalty and thus satisfied the Sixth Amendment – was not contrary to or an unreasonable application of *Ring* or *Hurst*. *Id*. at 920-24. The petitioner does not acknowledge *Waldrop*, but he can fare no better.

The petitioner requests a COA regarding his *Ring* claim. (Doc. 60 at 8-9). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As to claims rejected on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As to claims rejected on procedural grounds, "a COA should issue when the prisoner shows, at least, that jurists of

---

[2] At the risk of belaboring the point, the *Hurst* Court rejected the respondent's argument that the defendant had "admitted in various contexts that an aggravating circumstance existed" by questioning whether such an admission could constitute a waiver of his right to jury trial and by denying that such an admission had been made. 136 S. Ct. at 622-23. The Court did not say that such an admission would be immaterial because the petitioner had made no comparable admission regarding the existence or weight of mitigating circumstances.

5

reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. The Court concludes that jurists of reason would not find debatable either the Court's procedural ruling (that the petitioner may not raise *Hurst* on a Rule 59(e) motion) or its assessment of the constitutional claim, with or without consideration of *Hurst*.

In summary, the petitioner's motion to alter or amend as to this claim is due to be denied, and his request for a COA as to this claim is also due to be denied.

## II. Ineffective Assistance – Physical Restraints.

Habeas counsel interviewed jurors from the petitioner's trial and discovered that two of them had seen the petitioner in a "leg brace" or "shackles." (Doc. 55 at 33; Doc. 13 at 122, 126). The petition claims that, because the trial judge permitted this arrangement without making any case-specific determination of its necessity, and because prejudice is presumed, a due process violation is established under *Holbrook v. Flynn*, 475 U.S. 560 (1986), and *Deck v. Missouri*, 544 U.S. 622 (2005). (Doc. 13 at 75-78). The Court rejected this claim as procedurally defaulted, (Doc. 58 at 56-58), and the petitioner does not challenge that ruling on his instant motion.

The petition also claims that trial counsel was ineffective for failing to object to the use of physical restraints at trial and for failing to develop the record regarding same. (Doc. 13 at 78-79). The petitioner admitted this claim was not presented to the state courts at any level of his Rule 32 proceedings, but he argued that his procedural default was excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), due to the ineffective assistance of his Rule 32 counsel. (Doc. 55 at 35-36). The Court disagreed, ruling that, while *Martinez* might provide cause for the petitioner's procedural default at the Rule 32 trial level, it did not provide cause

for his procedural default at the Rule 32 appellate level. (Doc. 58 at 58-59). The petitioner challenges this ruling on his instant motion.

"Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. "Initial-review collateral proceedings" are those "which provide the first occasion to raise a claim of ineffective assistance at trial." *Id*. at 8. In Alabama, initial-review collateral proceedings are Rule 32 proceedings at the trial level. *Martinez* made explicitly clear that initial-review collateral proceedings do not include appeals from initial-review collateral proceedings, since those appeals are *not* the petitioner's first opportunity to raise an ineffective assistance claim. "The holding in this case does not concern attorney errors in … appeals from initial-review collateral proceedings …." *Id*. at 16.[3] By its terms, then, *Martinez* does not operate to save a petitioner from a procedural default occurring at the Rule 32 appellate level. Such a procedural default occurred in this case.

"An application for a writ of habeas corpus … shall not be granted unless it appears that … the applicant has exhausted the remedies available in the courts of the State …." 28 U.S.C. § 2254(b)(1). "[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts …." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Therefore, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id*. An

---

[3] This limitation in the scope of *Martinez* is plain from its terms but underscored by its discussion of *Coleman v. Thompson*, 501 U.S. 722 (1991). The *Martinez* Court cited *Coleman* for the proposition that "the initial-review collateral proceeding" constitutes a petitioner's "'one and only appeal' as to an ineffective-assistance claim." 566 U.S. at 8 (quoting *Coleman*, 501 U.S. at 756). The *Coleman* Court expressly distinguished such a proceeding from an "appeal from *that* determination." 501 U.S. at 756 (emphasis in original).

Alabama petitioner that does not raise a claim at the Rule 32 appellate levels[4] has not exhausted that claim. And since no opportunity is necessarily not a full or fair opportunity, a petitioner that "simply never raised a claim in state court" has not exhausted that claim. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).[5]

When a claim is unexhausted and it is too late for the petitioner to exhaust the claim, that claim is procedurally defaulted. *O'Sullivan*, 526 U.S. at 848; *Bailey*, 172 F.3d at 1303. The petitioner does not contend he could return to state court now, years after the fact, to exhaust his ineffective assistance claim. Therefore, the claim is procedurally defaulted due to his failure ever to present the claim to the state courts.

The petitioner argues that the Court's analysis must be wrong because, even though the petitioner in *Martinez* did not raise an ineffective assistance claim on appeal from dismissal of his initial-review collateral proceeding, the Supreme Court ignored that failure and did not declare it to be fatal to the petitioner's claim. (Doc. 60 at 30-31). The petitioner's argument overlooks several important points.

First, procedural default is an affirmative defense; the state is "obligated to raise procedural default as a defense, or lose the right to assert the defense thereafter." *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). The petitioner

---

[4] That is, both before the Court of Criminal Appeals and by petition for writ of certiorari to the Alabama Supreme Court. *See O'Sullivan*, 526 U.S. at 845 (exhaustion of a claim requires its presentation to the state supreme court even when its review is discretionary); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule.") (internal quotes omitted).

[5] "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). A petitioner has a "right … to raise" a claim on appeal even if he has no right to have the claim "review[ed]." *O'Sullivan*, 526 U.S. at 845 (emphasis omitted). Thus, the petitioner had the right to raise his ineffective assistance claim before the Court of Criminal Appeals even if that court could have elected not to consider the claim due to the petitioner's failure to raise it at the trial level.

identifies no indication that the State in *Martinez* asserted a procedural default based on a failure to raise the ineffective assistance claim on collateral appeal. Without such an assertion, the Supreme Court could not properly have addressed the ramifications of such a failure, and its silence in this regard thus denotes nothing regarding those ramifications.[6]

Second, there are two types of procedural default. The first arises "where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred." *Bailey*, 172 F.3d at 1302. The second arises "if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default." *Id*. at 1303.[7] This case involves the latter type of procedural default, while *Martinez* involved, and acknowledged that it involved, only the former. 566 U.S. at 9. There is thus no reason to believe the *Martinez* Court understood it was addressing, much less establishing a rule governing, the latter kind of procedural default.

Third, *O'Sullivan* was established law when *Martinez* was decided, and *O'Sullivan* plainly holds that, in order to satisfy the exhaustion prerequisite to habeas relief, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 844. If the petitioner's view of

---

[6] Collateral counsel initiated post-conviction proceedings by filing a notice to that effect but then filed something akin to an *Anders* brief, declaring she could identify no colorable claims. The trial court dismissed the action, and the petitioner (who claimed ignorance of the proceedings) did not appeal. He did, however, file a second notice raising various claims of ineffective assistance. The Arizona courts denied relief under this second notice pursuant to a state rule precluding relief based on claims that should have been asserted in a prior notice. This ruling created the only procedural default that was the subject of the Supreme Court's analysis. 566 U.S. at 6-7.

[7] As *O'Sullivan* reflects, this type of procedural default also arises when the petitioner asserts the federal claim at some point in the state process but does not pursue the claim at all levels of that process. 526 U.S. at 848.

9

*Martinez* were correct, it would result in a *sub silentio* partial overruling of *O'Sullivan* and the requirement of exhaustion generally; even though exhaustion requires a petitioner to "fairly presen[t] his claims to the state courts," *id*. at 848, the petitioner would have it that he need not present his claim to the state courts at all. Especially since there is no indication the issue was before *Martinez*, it would take an extraordinary leap to conclude that the Supreme Court nevertheless decided the issue, that it did so with no discussion whatsoever,[8] and that it did so by overruling other precedents that it neglected even to mention.

Fourth, the petitioner's rule would advantage prisoners with ineffective initial-review collateral counsel over prisoners with effective initial-review collateral counsel. The first class of prisoner would get a free pass to federal court on claims of ineffective assistance of trial counsel, while the second class would risk not just an adverse state ruling on such claims but also a subsequent failure to exhaust, and resulting procedural default, by appellate review collateral counsel. The petitioner offers no reasoned explanation for such a topsy-turvy scheme.

For the foregoing reasons, the Court rejects the petitioner's effort to read *Martinez* as eliminating the exhaustion requirement, and its consequences, for claims of ineffective assistance by trial counsel whenever initial-review collateral counsel omits the claim due to his own ineffective assistance.

The petitioner asks the Court to grant him a COA on this claim because reasonable jurists could disagree regarding the Court's procedural ruling that the claim is unexhausted and procedurally defaulted. (Doc. 60 at 31). The Court concludes that reasonable jurists could find it debatable whether *Martinez* is as limited as the Court concludes it is. *Slack*, 529 U.S. at 484. To obtain a COA, however, the petitioner must also show that reasonable jurists would find it debatable both whether he satisfies *Martinez* (a procedural issue) and whether the petition states a valid claim of the denial of a constitutional right to effective

---

[8] Neither "exhaustion" nor any of its cognates appear in the *Martinez* opinion.

assistance of trial counsel (a merits issue).  *Id*.  Because the analysis of these questions is intertwined, the Court addresses them together.

To excuse a procedural default under *Martinez*, the petitioner must show three things. First, that initial-review collateral counsel, by failing to raise a claim of ineffective assistance of trial counsel, "was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 … (1984)," *i.e.*, that he "perform[ed] below constitutional standards."  566 U.S. at 14, 16.  Second, that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one," which means "that the claim has some merit."  *Id*. at 14.  These two items, combined, establish cause for the procedural default.  *Id*.  Third, "prejudice from a violation of federal law."  *Id*. at 10, 17, 18.  "A petitioner establishes prejudice [in the context of the cause-and-prejudice escape route from a procedural default] by showing that there is a reasonable probability that the result of the proceeding would have been different."  *Butts v. GDCP Warden*, 850 F.3d 1201, 1211 (11th Cir. 2017).

To establish a claim of ineffective assistance of trial counsel, the petitioner "must show both deficient performance by counsel and prejudice."  *Premo v. Moore*, 562 U.S. 115, 121 (2011) (internal quotes omitted).  "To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness," and "[a] court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance."  *Id*. (internal quotes omitted).  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or common custom."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotes omitted).  To establish prejudice for purposes of *Strickland*, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

A due process violation under *Deck* constitutes one of the most straightforward paths to relief from an adverse criminal verdict. The Constitution "prohibit[s] the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." 544 U.S. at 629. Relevant state interests include "special security needs or escape risks," *id*. at 633, but they must be interests "related to the defendant on trial," *id*., not mere generalizations. In all but "exceptional case[s] where the record itself makes clear that there are indisputably good reasons for shackling," the trial judge must make "formal or informal findings" supporting her decision, which must address not only why shackles are appropriate but also why shackles visible to the jury (many if not most are not) are appropriate. *Id*. at 634-35. If the petitioner can show that: (1) he was shackled; (2) the shackles were visible to the jury; and (3) the trial judge failed to make the necessary findings, he "need not demonstrate actual prejudice to make out a due process violation"; instead, the state bears the burden of proving beyond a reasonable doubt that the shackling error did not contribute to the trial result. *Id*. at 635. The same rules apply to the sentencing phase of a capital trial. *Id*. at 632-33.

The petitioner has presented evidence that at least two jurors saw him shackled during trial, and he appears to be correct in his assertion that the trial judge did not attempt on the record to justify the practice in his case. Because trial counsel was of course present during trial, he presumably was aware his client was shackled, that jurors could see him in this state, that the trial judge had not justified the procedure, and that no unstated grounds, specific to the petitioner and his case, indisputably supported visibly shackling him. Given that scenario and the near impossibility of proving a negative (especially beyond a reasonable doubt), it is difficult to understand why trial counsel did not object.

One possibility is that the petitioner did not appear in shackles during the guilt-innocence phase of the trial but only during the sentencing phase.[9] The petitioner was tried in 1999, and *Deck* was not decided until 2005. *Deck*'s extension of shackling principles to the sentencing phase of a capital trial "establishe[d] a new rule," and the Eleventh Circuit has "held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." *Marquard v. Secretary, Department of Corrections*, 429 F.3d 1278, 1313 (11th Cir. 2005) (internal quotes omitted).[10] Thus, counsel for a petitioner who was shackled during capital sentencing proceedings in 1992 or 1993 "was not ineffective in failing to contemplate *Deck*." *Id*.

*Marquard* indicates that, to the extent the petitioner asserts he was shackled only during the penalty phase, his trial counsel was not ineffective in failing to object to the practice, and his collateral counsel thus was not ineffective in failing to raise a claim that trial counsel was ineffective in that regard. In another pre-*Deck* case, however, the Eleventh Circuit required that a state sentence of death be set aside and a new sentencing occur due to a shackling error at sentencing. *Elledge v. Dugger*, 823 F.2d 1439, 1450-52 (11th Cir.), *withdrawn in unrelated part*, 833 F.2d 250 (11th Cir. 1987). *Elledge* indicates that shackling at sentencing could have formed the basis of a valid objection in 1999. *See also Gates v. Zant*, 863 F.2d 1492, 1501 (11th Cir. 1989) ("This court recently has extended the general prohibition against shackling at trial to the sentencing phase of a death penalty case.").

---

[9] The petitioner's evidence is phrased broadly enough to indicate he was shackled during either or both phases. (Doc. 13 at 122, 126).

[10] *Accord Rambaran v. Secretary, Department of Corrections*, 821 F.3d 1325, 1334 (11th Cir. 2016) ("No holding of the Supreme Court clearly establishes that in order to perform within the wide range of reasonable professional assistance, … counsel must accurately predict how the law will turn out or hedge every bet in the hope of a favorable development.").

13

An objection to shackling at the guilt-innocence phase clearly was available in 1999. While the Supreme Court in *Deck* first expressly held that the Constitution forbids shackling visible to the jury without an appropriate, articulated and supported judicial explanation, the Court had previously "suggested that a version of this rule forms part of the Fifth and Fourteenth Amendments' due process guarantee," and "those statements identif[ied] a basic element of the 'due process of law' protected by the Federal Constitution." 544 U.S. at 627, 629 (explaining *Holbrook v. Flynn*, 475 U.S. 560 (1986), and *Illinois v. Allen*, 397 U.S. 337 (1970)). The Eleventh Circuit long ago "fully adopted the broad concerns reflected in the[se] Supreme Court opinions." *Elledge*, 823 F.2d 1451. *Elledge* and the cases it cites reflect that the Eleventh Circuit has framed the inquiry largely as did the Supreme Court in *Deck*. *See* 823 F.2d at 1452 ("The second problem with the shackling decision is that the State at no time made any showing that the shackling was necessary to further an essential state interest."); *Allen v. Montgomery*, 728 F.2d 1413-14 (11th Cir. 1984) ("We agree that seldom will the use of handcuffs be justified as a courtroom security measure," as "[s]uch restraints … tend to erode a defendant's constitutionally guaranteed presumption of innocence," but they were permissible where the judge and a witness had received death threats and two other persons had been kidnapped and offered as ransom for the release of a co-defendant); *Zygadio v. Wainwright*, 720 F.2d 1221, 1223 (11th Cir. 1983) (because a defendant's "right to be tried free of restraints may be outweighed by these considerations [of escape, physical safety and disruption], the trial judge [has] reasonable discretion to decide whether to shackle or otherwise restrain the defendant.").

A potential difference between the rule as set forth in *Deck* and the Eleventh Circuit's pre-*Deck* precedents is the treatment of prejudice. *Deck* explicitly holds that a defendant required to be visibly shackled before the jury without adequate justification "need not demonstrate actual prejudice to make out a due process violation." 544 U.S. at 635. The *Allen* Court, in contrast, noted that

the defendant was not entitled to relief because he had "shown no prejudice resulting from his having been brought into the courtroom in handcuffs." 728 F.2d at 1414.

Despite *Allen*, it does not appear that the Eleventh Circuit, pre-*Deck*, required a defendant shackled throughout trial to show actual prejudice. The defendant in *Allen* was not in handcuffs during trial, as they "were removed as soon as he was brought into the courtroom." 728 F.2d at 1413. Moreover, because the *Allen* Court ruled that the security precautions were reasonable and necessary in view of the death threats and kidnappings, its statement regarding prejudice was arguably dicta. In any event, *Elledge* expressly acknowledged the Supreme Court's description of shackling as an "'inherently prejudicial practice.'" 823 F.2d at 1451 (quoting *Holbrook*, 475 U.S. at 568). *Deck*, in turn, identified the same excerpt from *Holbrook* as the basis of its holding that the defendant need not show actual prejudice. 544 U.S. at 635.

It thus appears that trial counsel was presented with a strong case for a valid objection to his client's appearance before the jury with visible shackles. Counsel was presumably aware of all the pertinent facts and should have been aware of the pertinent law, and no countervailing considerations that might have counseled against raising a due process objection have been suggested. Because the Court has denied relief based on procedural default, it need not definitively resolve whether trial counsel's performance was constitutionally deficient. For purposes of considering the petitioner's request for a COA, it is sufficient to conclude that reasonable jurists could so view the case, and the Court so concludes.

To prevail on a claim of ineffective assistance, a petitioner must establish prejudice from counsel's deficient performance. In the context of an omitted objection to visible shackling, the petitioner must show "a reasonable probability" that, but for the visible shackling, the jury either would not have convicted him of a capital offense or would not have recommended the death penalty. *Jones v.*

15

*Secretary, Department of Corrections*, 834 F.3d 1299, 1321 (11th Cir. 2016); *Marquard*, 429 F.3d at 1313.[11]

Neither Jones nor Marquard demonstrated a reasonable probability of a different result at trial. The *Marquard* Court, which addressed only sentencing, based this conclusion on: the brutality of the murder; the defendant's premeditation; the unanimous jury recommendation; and the existence of four aggravating circumstances versus zero statutory mitigating circumstances. 429 F.3d at 1314. The *Jones* Court based this conclusion regarding the guilt-innocence stage on the overwhelming evidence of the defendant's guilt. 834 F.3d at 1321-22. The Court based this conclusion regarding sentencing on: the gruesomeness of the murder and the victim's horrific suffering; the lack of provocation for the crime; the defendant's extensive violent criminal history; the jury's brief (under 1.5 hours) deliberation; the brief period the defendant was visibly shackled (one day out of five); the proceedings during which he was shackled (jury selection only); and the vote in favor of death (10-2). *Id*. at 1322-23.

Some of the factors the Eleventh Circuit relied on in *Jones* and *Marquard* are present here, but others are either absent or arguably less compelling. For example, there was no jury finding of premeditation, and even the state's expert did not believe the petitioner entered the store with the intent to kill Ewing. While two of the aggravating circumstances in *Marquard* were present in this case, two others were not. Unlike in *Jones*, the petitioner had no violent criminal history, and it appears he was shackled during trial itself, for several days. The petitioner's

---

[11] As discussed in the Court's previous order, the reasonable probability analysis addresses the jury's recommendation rather than the trial judge's decision. (Doc. 58 at 50-51).

16

jury deliberated for over 3.5 hours,[12] and its vote was not unanimous as in *Marquard* or as far above the minimum legal threshold as in *Jones*.[13]

The Court also takes note of the Supreme Court's observations regarding shackling. According to *Holbrook*, to say a practice is inherently prejudicial (as is shackling) is to say that "an unacceptable risk is presented of impermissible factors coming into play." 475 U.S. at 570 (internal quotes omitted). According to *Deck*, "almost inevitably," shackling negatively impacts a jury's perception of the defendant's character and implies to the jury that the court considers the defendant dangerous – items that are nearly always relevant factors in a jury's decisionmaking, whether emphasized by the state or not. Because the sentencing process requires juries to accurately weigh relevant but "unquantifiable and elusive" considerations, the inherently prejudicial impact of visible shackling can be a "thumb on death's side of the scale." 544 U.S. at 633 (internal quotes omitted). The high inherent danger of prejudice from visible shackling – so high it obviates proof in support of a due process claim – suggests that courts should not easily dismiss its impact on a verdict or, especially, a recommendation of death.

As with deficient performance, it is not necessary for the Court to resolve whether the petitioner suffered actual prejudice as a result of trial counsel's failure to object to the visible shackling of his client. For present purposes, it is sufficient to conclude that reasonable jurists would find the issue debatable. The Court concludes that they would.

For the reasons stated above, the Court concludes that reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a

---

[12] (Doc. 25-6 at 3; Doc. 25-7 at 2).

[13] The vote in this case was 11-1 in favor of death; the minimum vote required to return such a recommendation is 10-2. Ala. Code § 13a-5-46(f). The vote in *Jones* was 10-2 in favor of death, but in Florida at the time the minimum vote required to support such a recommendation was 7-5. *Hardwick v. Crosby*, 320 F.3d 1127, 1191 n.218 (11th Cir. 2003). The closer the initial vote is to the statutory minimum, the more reasonable the probability that the jury would not have recommended death but for counsel's ineffective assistance. *Id*.

17

constitutional right to effective assistance of trial counsel (the merits issue). For similar reasons, the Court concludes that reasonable jurists would find it debatable whether the petitioner satisfies *Martinez* (the procedural issue).

As reflected in his Rule 32 petition and supporting brief, initial-review collateral counsel was aware in 2005 both that the petitioner had worn potentially visible shackles at trial and that the trial judge had not performed the necessary balancing to determine whether this practice was appropriate under the circumstances. (Doc. 38-2 at 55-72). Counsel, however, was unaware if any jurors actually saw the shackles, (*id*. at 60), and there is evidence he did not contact the jurors to find out, even though habeas counsel some ten years later located two jurors that recalled the petitioner's leg brace – one of whom still lived at the same address as at the time of the 1999 trial. (Doc. 13 at 113-26; Doc. 55 at 33). Presumably because he had no evidence that the jury saw his client in shackles (since no other good reason to abandon an otherwise sound claim appears), collateral counsel dropped his claims at the commencement of the Rule 32 hearing. (Doc. 44-2 at 4). On this record, it is at least fairly debatable that collateral counsel performed below constitutional standards. As discussed above, it is at least fairly debatable that the underlying ineffective-assistance-of-counsel claim is substantial in the sense of having some merit. And as also discussed above, it is at least fairly debatable that, but for collateral counsel's ineffective performance, there is a reasonable probability the result would have been different.[14]

In summary, the petitioner's motion to alter or amend as to this claim is due to be denied, and his request for a COA as to this claim is due to be granted.

---

[14] The success of the petitioner's position depends on the affidavits of two jurors reflecting they saw the petitioner shackled during trial. The respondent argues that Section 2254(e)(2) precludes the petitioner from relying on this evidence because he did not present it to the state courts in his Rule 32 proceedings. (Doc. 52 at 68-69). But if, as the petitioner argues, *Martinez* excuses his failure to raise the claim at any level of the Rule 32 process, it would appear to be at least fairly debatable that his failure to present evidence in support of the claim in those Rule 32 proceedings is likewise excused.

18

**III. Remaining Claims.**

The petitioner also revisits his claims: that trial counsel was ineffective in pressing unsupportable defenses while ignoring the supportable defense that the petitioner lacked the specific intent to kill; that trial counsel was ineffective in declining a charge on heat-of-passion manslaughter and failing to argue it as a lesser-included offense; and that the petitioner's due process rights were violated by the trial court's failure to charge the jury on heat-of-passion manslaughter. The petitioner's presentation is a rehash of arguments made previously, sprinkled with misstatements regarding the law and the opinions of the Alabama courts and this Court. These thin materials do not furnish grist for a successful Rule 59(e) motion, and no good purpose would be served by addressing the petitioner's errors in detail. Nor has the petitioner shown that a COA should be granted as to any of these claims.

**CONCLUSION**

For the reasons set forth above, the petitioner's motion to alter or amend is **denied**. His request for a COA, construed as a motion to reconsider the Court's previous denial of such relief, is **granted** with respect to his ineffective assistance – physical restraints claim and is **denied** in all other respects.

DONE and ORDERED this 11th day of March, 2019.

<u>s/WILLIAM H. STEELE</u>
UNITED STATES DISTRICT JUDGE